# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:18-CV-00630-KDB

| | |
|---|---|
| ACE MOTOR ACCEPTANCE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MCCOY MOTORS, LLC,<br>ROBERT MCCOY, JR.,<br>MISTY MCCOY,<br>FLASH AUTOS, LLC,<br>ROBERT MCCOY III,<br>MCCOY JOINT REVOCABLE TRUST,<br><br>Defendants. | **ORDER** |

**THIS MATTER** is before the Court on the defendants Robert McCoy, III's and Flash Autos, LLC's Partial Motion to Dismiss the Third Complaint (Doc. No. 50), Robert McCoy, III's and Flash Auto, LLC's Motion for More Definite Statements (Doc. No. 52), and the McCoy Joint Revocable Trust's Motion to Dismiss (Doc. No. 56).

The Court has carefully reviewed and considered the Third Amended Complaint (Doc. No. 41), the parties' motions and briefs, and all other relevant portions of the record. For the reasons stated herein, the Court will **GRANT IN PART** and **DENY IN PART** Robert McCoy, III's and Flash Auto, LLC's Partial Motion to Dismiss the Third Amended Complaint; **DENY** Robert McCoy, III's and Flash Auto, LLC's Motion for More Definite Statements; and **DENY** McCoy Joint Revocable Trust's Motion to Dismiss.

# I. BACKGROUND

While this action is still in the pleadings stage, there have been extensive prior proceedings which have been detailed in numerous orders by this Court and the Bankruptcy Court. The orders detailing prior proceedings include: (1) Order Concerning Interim Servicing of Accounts of Vehicle Buyers and Order Setting Hearing on Preliminary Injunction (Bankr. Doc. No. 8);[1] (2) Order Granting Motions for Preliminary Injunction and Other Emergency Relief (Bankr. Doc. No. 26); (3) Order Finding Certain Defendants in Civil Contempt and Continuing Pretrial Conference (Bankr. Doc. No. 47); (4) Order of US Bankruptcy Judge Recommending Withdrawal of Reference of Adversary Proceeding for Further Civil, and Potentially Criminal, Contempt Proceedings (Doc. No. 1); (5) Supplemental Order (To November 21, 2018 Order Recommending Withdrawal) (Doc. No. 2); and (6) Order to Show Cause (Doc. No. 60). This Court has twice referred this matter to the United States Attorney for the Western District of North Carolina for criminal prosecution and investigation into Robert McCoy, Jr.'s ("McCoy Jr.") and Misty McCoy's actions related to this case. (Doc. Nos. 3, 71).

A brief history of the case shows that this matter arises from a dispute between McCoy Motors, LCC ("McCoy Motors"), a South Carolina used car dealership, its owners McCoy Jr. and Misty McCoy, and Ace Motor Acceptance Corporation ("Ace"), one of McCoy Motors' lenders.[2] In January 2018, Ace entered into a series of written agreements with the Original Defendants. Pursuant to the Agreements, Ace provided initial financing to purchase vehicles for ultimate sale by McCoy Motors and later purchased "receivables from the financing" of these sales.

---

[1] Citations to the Bankruptcy Court's docket, No. 18-03036, are designated as "Bankr. Doc. No."

[2] McCoy Jr., Misty McCoy, and McCoy Motors are sometimes referred to as the "Original Defendants" in this Order.

Ace is a Chapter 11 Debtor in Possession in the Western District of North Carolina. After a loan payment default by McCoy Motors, Ace attempted to recover its property and repossess its collateral from the Original Defendants. The Original Defendants resisted Ace's recovery by blocking access to the premises, suing the repossession agents, and swearing out criminal warrants against Ace's employees. Ace then filed suit to liquidate its debt and obtain judicial assistance in recovering the collateral.

Ace filed its original complaint in June 2018 in the United States Bankruptcy Court for the Western District of North Carolina seeking, among other things, injunctive relief prohibiting asset transfers, the recovery of collateral, and damages arising out of breach of contract. Ace filed its first amended complaint on July 10, 2018, asserting another claim for relief against McCoy Jr. The parties bringing the present motions, Robert McCoy III ("McCoy III"), Flash Autos, LLC ("Flash Autos") and the McCoy Joint Revocable Trust ("Trust") were not mentioned in Ace's initial or first amended complaint.[3]

Ace's second amended complaint added Flash Autos and McCoy III as defendants and was filed on December 19, 2018. After filing the seconded amended complaint, Ace became aware of additional factual allegations that arose after it had filed the second amended complaint. Accordingly, Ace was permitted to file a third amended complaint ("TAC") (Doc. No. 41) in light of these new allegations. The TAC combines the allegations in the prior complaints, deletes several matters which have been ruled on by the Bankruptcy Court, or which are moot, and alleges new facts and counts against McCoy III, Flash Autos, and the Trust. McCoy III and Flash Autos now move to dismiss eight of the eleven claims alleged against them and move for more definite

---

[3] Robert McCoy III is the son of McCoy Jr. and Misty McCoy. He is referred to as "Tripp McCoy" in the defendants' current motions. Because Ace's third amended complaint refers to him as "McCoy III," the Court will refer to him as McCoy III.

statements on the remaining three claims. The Trust seeks to dismiss the one claim alleged against it.

## II. STANDARD OF REVIEW

### A. Motions to Dismiss

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."Fed. R. Civ. P. 8(a)(2). However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999). In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

However, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*,

550 U.S. at 555 (citations omitted). Moreover, a court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'shp*., 213 F.3d 175, 180 (4th Cir. 2000).

### B. Motion for More Definite Statement

Federal Rule of Civil Procedure 12(e) allows a party to move for a more definite statement when the pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." F.R.C.P. 12(e). "Unlike a motion to dismiss for failure to state a claim, which attacks the legal sufficiency of a complaint, a motion for a more definite statement focuses on whether a party has enough information to frame an adequate answer." *Fogner v. Am. Home Mortg. Servicing*, No. 1:11-CV-1073, 2012 U.S. Dist. LEXIS 194690, at *2 (M.D.N.C. 2012) (citing *Re/Max, LLC v. Underwood*, No. WDQ-10-2367, 2011 U.S. Dist. LEXIS 55943 (D. Md. May 25, 2011); *Frederick v. Koziol*, 727 F. Supp. 1019, 1020-21 (E.D. Va. 1990)).

### III. DISCUSSION

### A. McCoy III's and Flash Autos' Motion to Dismiss

McCoy III and Flash Autos move for the following claims to be dismissed: Preliminary Injunction (Claim 16); Payment of Legal Fees and Costs Incurred (Claim 13); Conspiracy to Defraud and/or Aiding and Abetting Fraudulent Transfers (Claim 10); Conversion (Claim 9); Unfair and Deceptive Trade Practices (Claims 12 and 17); Violation of Automatic Stay (Claim 11); Constructive Trust (Claim 15); and Successor Liability (Claim 19) as to McCoy III individually.

1. *Preliminary Injunction & Successor Liability as to McCoy III*

McCoy III and Flash Autos contend that Ace's claim for preliminary injunction must be dismissed because it is "a remedy, not an independent cause of action." (Doc. No. 51, at 7). Ace does not contest the defendants' motion with respect to its claim for preliminary injunction. (Doc. No. 61, at 4). Therefore, the defendants' motion to dismiss Claim 16 is granted to the extent that a claim for a preliminary injunction is not recognized as an independent cause of action, but this ruling does not affect the availability of this relief in the future if it becomes necessary.

McCoy III argues that he can not be held liable individually as a "successor" of McCoy Motors and that to the extent any such claim exists against McCoy III, it would be covered under Ace's claim for piercing the corporate veil or voidable transfers. (Doc. No. 51, at 15). Ace does not contest McCoy III's motion to dismiss its claim for successor liability as to McCoy III. Therefore, the Court will grant McCoy III's motion to dismiss Claim 19 as to McCoy III only.

2. *Payment of Legal Fees and Costs Incurred*

Ace asserts that it is entitled to legal fees and costs under North Carolina General Statute § 6-21.2, Rule 11, and 28 U.S.C. § 1927. (Doc. No. 51, ¶ 405). McCoy III and Flash Autos argue that Ace's claim for payment of legal fees and costs incurred is not a cause of action, but a type of damages.

Ace's TAC makes it clear that its claim for attorney's fees and costs under North Carolina General Statute Section 6-21.2 is directed towards McCoy Jr., Misty McCoy, and McCoy Motors, and not towards McCoy III or Flash Autos. As for Ace's claim for legal fees and costs under Rule 11, any request for the imposition of such sanctions should be filed in a separate motion and the movant should follow the safe harbor provision. Fed. R. Civ. P. 11(c)(2) ("A motion for sanctions must be made separately from any other motion . . . ."); *see also Nelson v. Nationwide Mut. Ins.*

*Co.*, No. 3:11-cv-223, 2012 WL 393242, at *5 (S.D. Miss. Feb. 6, 2012) (denying the defendants' motion for attorneys' fees because it was not filed separately from any other motion as required by Rule 11, but instead was included in their motion to dismiss). As to legal fees and costs under 28 U.S.C. § 1927 for unreasonable and vexatious attorney conduct, Ace has offered no allegations of attorney conduct by counsel for McCoy III and Flash Autos that would violate this rule in its TAC. *See* 28 U.S.C. § 1927 ("Any attorney . . . in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."). Therefore, Ace's claim for legal fees and costs under Rule 11 and 28 U.S.C. § 1927 is dismissed without prejudice to seek these remedies at the appropriate time. This ruling does not apply to attorneys' fees and costs this Court or the Bankruptcy Court have already ordered any of the defendants to pay. This ruling simply means that, moving forward, Ace will file separate motions seeking these types of damages. It is clear, however, that Ace has provided sufficient notice to the defendants that it seeks to recover these fees.

 3. *Conspiracy to Defraud and/or Aiding and Abetting Fraudulent Transfers*

North Carolina does not recognize an independent cause of action for civil conspiracy. *USA Trouser, S.A. de C.V. v. Williams*, 812 S.E.2d 373, 380 (N.C. Ct. App. 2018). "A claim for damages resulting from a conspiracy to defraud exists where there is an agreement between two or more persons to defraud a party, and as a result of acts done in furtherance of, and pursuant to the agreement, that party is damaged." *Johnson v. First Union Corp.*, 496 S.E.2d 1, 7 (N.C. Ct. App. 1998). "A claim for conspiracy to defraud cannot succeed without a successful underlying claim for fraud." *Jay Group, Ltd. v. Glasgow*, 534 S.E.2d 233, 236 (N.C. Ct. App. 2000); *see also USA*

7

*Trouser, S.A. de C.V.*, 812 S.E.2d at 380. "In such a case, all of the conspirators are liable, jointly and severally, for the act of any one of them done in furtherance of the agreement." *Fox v. Wilson*, 354 S.E.2d 737, 743 (N.C. Ct. App. 1987).

Ace's TAC alleges that the creation of Flash Autos "was in furtherance of a conspiracy to defraud [Ace] and the bankruptcy estate, and the actions of any of the Original Defendants and/or McCoy III are imputed to other defendants." (TAC, ¶ 268). It further alleges that "Flash was established by the Original Defendants and McCoy III for the fraudulent purpose of escaping McCoy Motors' debts and liabilities to its creditors." (TAC, ¶ 318); *see also* TAC, ¶¶ 319-21; 325. Ace has stated a claim for fraud and fraud in the inducement against the Original Defendants (TAC, ¶¶ 348-56), and has sufficiently alleged that McCoy III and Flash Autos were complicit and aided in such fraud. Thus, the defendants' motion to dismiss Ace's claim for conspiracy to defraud and/or aiding and abetting fraudulent transfers (Claim 10) is denied.

*4. Conversion*

McCoy III and Flash Autos assert that Ace has failed to allege sufficient facts to support its claim for conversion. Specifically, they argue that the TAC does not allege what assets are the subject of the conversion claim, nor does it allege that McCoy III individually interfered with or deprived Ace of any assets.

Under North Carolina law, conversion is "the unauthorized assumption and exercise of the right of ownership over the goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of the owner's rights." *White v. Consol. Planning, Inc.*, 603 S.E.2d 147, 165 (N.C. Ct. App. 2004) (internal quotations omitted). "There are, in effect, two essential elements of a conversion claim: ownership in the plaintiff and wrongful possession or conversion

by the defendant." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 723 S.E.2d 744, 747 (N.C. 2012).

Ace's TAC explicitly lays out the elements establishing a conversion claim. With regards to the assets at issue, the TAC identifies the property as the assets subject to the agreements made between Ace and the Original Defendants. (TAC, ¶¶ 10-38, 50). Ace has also alleged that Flash Autos was created to assist in the hiding, moving, and concealing of Ace's assets, and that McCoy III is "the Manager and Registered Agent of Flash." *See, e.g.*, TAC, ¶¶ 5-6; 268-308. In support of its claims, Ace references and incorporates the Bankruptcy Court's order finding that Flash Autos and McCoy Motors are one in the same. (TAC, ¶ 267). The TAC also alleges, among other things, that McCoy III and Flash Autos are "using all the same property that McCoy Motors was using," are in possession of automobiles and automobile parts that are part of Ace's collateral, and are accepting payments from former McCoy Motors' customers whose accounts are part of Ace's collateral. (TAC, ¶ 288, 292-97). Accordingly, McCoy III's and Flash Autos' motion to dismiss Ace's conversion claim (Claim 9) is denied.

5. *Unfair and Deceptive Trade Practices*

The defendants argue that Ace's Unfair and Deceptive Trade Practices claims should be dismissed because "there are no factual allegations suggesting Tripp McCoy or Flash Autos did anything 'unfair' or 'deceptive' that caused injury to [Ace]." (Doc. No. 51, at 12). Ace contends that its claims for unfair and deceptive trade practices should not be dismissed because the Bankruptcy Court "has already found that McCoy III and Flash were involved with converting assets on which [Ace] has a lien." (Doc. No. 61, at 4).

To establish an unfair and deceptive trade practice claim, "a plaintiff must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury

to plaintiffs." *Walker v. Fleetwood Homes of N.C., Inc.*, 653 S.E.2d 393, 399 (N.C. 2007). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Hills Mach. Co., LLC v. Pea Creek Mine, LLC*, 828 S.E.2d 709, 716 (N.C. Ct. App. 2019) (quoting *Marshall v. Miller*, 276 S.E.2d 397, 403 (N.C. 1981)). "[A] practice is deceptive if it has the capacity or tendency to deceive." *Walker*, 653 S.E.2d at 399 (alteration in original) (quoting *Marshall,* 276 S.E.2d at 403).

The TAC alleges throughout that McCoy III and Flash Autos were involved in hiding, moving, and transferring assets on which Ace has a lien in an effort to prevent Ace from recovering its collateral. (TAC, ¶¶ 268-308). Ace also alleges that Flash Autos was created for the purpose of McCoy Motors' escaping its debts and deceiving its creditors. (TAC, ¶ 318). The TAC further states that the defendants are deceiving former McCoy Motor customers by requiring them pay their car payments to Flash Autos in cash, as to avoid creating a paper trail. (TAC, ¶ 292). Thus, the Court finds Ace has sufficiently pled its claims for unfair and deceptive trade practices (Claims 12 and 17).

*6. Violation of Automatic Stay*

McCoy III and Flash Autos assert that Ace does not state a claim for violation of the automatic stay because Ace fails to assert how or when they have interfered with or deprived Ace of any alleged assets. Ace responds that the claim should survive because the Bankruptcy Court has already found that McCoy III and Flash Autos were involved with converting assets on which Ace has a lien.

To recover from a willful violation of an automatic stay under 11 U.S.C. § 362(k), the debtor must prove: "(1) that a bankruptcy petition was filed, (2) that the debtors are 'individuals' under

10

the automatic stay provisions, (3) that creditors received notice of the petition, (4) that the creditors' actions were in willful violation of the stay, and (5) that the debtor suffered damages." *Grisard-Van Roey v. Auto Credit Ctr., Inc. (In re Grisard-Van Roey)*, 373 B.R. 441, 444 (Bankr. D.S.C. 2007). Willful violations are those done deliberately and intentionally with knowledge of the automatic stay. *See Budget Service Co. v. Better Homes of Virginia, Inc.*, 804 F.2d 289, 292-93 (4th Cir. 1986). Further, "a creditor's inaction can be found to constitute a willful violation of the automatic stay." *Robb v. Nat'l Tree Co. (In re Robb)*, 399 B.R. 171, 175 (Bankr. N.D.W. Va. 2008).

Ace alleges that McCoy III and Flash violated provisions of the automatic stay statute that prevents all entities in a Chapter 11 bankruptcy from committing, *inter alia*, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title," and "the setoff of any debt owing to the debtor that arose before the commencement of the case under [Chapter 11] against any claim against the debtor." 11 U.S.C. § 362(a)(3), (6), (7); (TAC, ¶¶ 392-95). Here, drawing all reasonable factual inferences in Ace's favor, Ace could very well prove a set of facts in support of its claim that McCoy III and Flash Autos willfully violated the automatic stay. This is especially true given the many allegations that McCoy III and Flash Autos assisted McCoy Jr., Misty McCoy, and McCoy Motors in hiding and converting assets. Therefore, McCoy III's and Flash Autos' motion to dismiss Ace's claim for violation of automatic stay (Claim 11) is denied.

7. *Constructive Trust*

McCoy III and Flash Autos argue that Ace's constructive trust claim should be denied because it fails to allege sufficient facts to support a claim. They assert that Ace's allegation that

11

"Defendants currently possess Assets in contravention to their duties to turnover property of the Debtor's estate to [Ace]," is ambiguous because the assets are not defined. Further, they argue there is no allegation that McCoy III or Flash Autos has control and possession of the vehicles on which Ace has a lien. Ace contends that it has alleged sufficient facts to state a claim and that any missing factual allegations are due to McCoy III's and Flash Autos' failure to comply with subpoenas requiring them to turn over documents and to testify regarding these issues.

"A constructive trust is imposed 'to prevent the unjust enrichment of the holder of title to, or of an interest in, property which such holder acquired through fraud, breach of duty or some other circumstance making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust.'" *Roper v.* Edwards, 373 S.E.2d 423, 425 (N.C. 1988) (quoting *Wilson v. Development Co.*, 276 N.C. 198, 211 (N.C. 1970).

The TAC states that there are cars on Flash Autos' lot that are subject to Ace's lien and that Flash Autos is collecting payments from the Vehicle Buyer Accounts that are Ace's collateral and property of the bankruptcy estate. (TAC, ¶¶ 292-97). The Court finds that the TAC sets forth allegations sufficient to show that certain circumstances make it inequitable for McCoy III and Flash Autos to retain property on which Ace has a lien. Thus, the defendants' motion to dismiss Ace's constructive trust claim (Claim 15) is denied.

### B. McCoy III's and Flash Autos' Motion for More Definite Statement

McCoy III and Flash Autos concede that there are three claims that could survive a motion to dismiss: Piercing the Corporate Veil (Claim 14), Fraudulent Conveyance (Claim 18), and Successor Liability (Claim 19) with respect to Flash Autos only. They request this Court, however, to require Ace to make a more definite statement on these three claims "because they are so vague

and ambiguous that Tripp McCoy and Flash Autos cannot reasonably prepare a response." (Doc. No. 53, at 2).

1. *Piercing the Corporate Veil*

McCoy III and Flash Autos contend that the TAC, "while long and verbose, fails to state any facts relevant to the analysis for successor liability under the law or whether the corporate form should be disregarded to pierce the veil of Flash Autos to make Tripp McCoy liable for damages." (Doc. No. 53, at 3). They argue since Ace claims McCoy Jr. is the one actually controlling Flash Autos, McCoy III cannot be liable as he is not the individual controlling and dominating Flash Autos.

Disregarding the corporate form or "piercing the corporate veil" extends liability beyond a corporation's separate identity to prevent injustice or abuse. *See Pertuis v. Front Roe Resturants, Inc.*, 817 S.E.2d 273, 280 (S.C. 2018); *Sturkie v. Sifly*, 313 S.E.2d 316, 318 (S.C. Ct. App. 1984) ("If any general rule can be laid down, it is that a corporation will be looked upon as a legal entity until sufficient reason to the contrary appears; but when the notion of legal entity is used to protect fraud, justify wrong, or defeat public policy, the law will regard the corporation as an association of persons."). South Carolina courts apply a two-prong test to pierce the corporate veil. *Dumas v. InfoSale Corp.*, 463 S.E.2d 641, 643-44 (S.C. Ct. App. 1995). The first prong is an eight factor analysis that includes whether the corporation was grossly undercapitalized, failure to observe corporate formalities, non-payment of dividends, insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records, and the fact that the corporation was merely a façade for the operations of the dominant stockholder. *Id.* The second prong requires the plaintiff to prove "an element of injustice or fundamental unfairness if the acts of the corporation be not

regarded as the acts of the individuals." *Id.* (quoting *Sturkie*, 313 S.E.2d at 318). Ace's TAC sufficiently alleges McCoy III's complicity in the alleged fraudulent transfers of assets and revenues to Flash Autos to hold McCoy III personally liable, even if McCoy Jr. is not controlling Flash Autos.[4] Therefore, the Court finds that Ace has provided a clear enough statement for McCoy III and Flash Autos to respond to this claim.

   2. *Fraudulent Conveyance*

McCoy III and Flash Autos argue that a more definite statement is necessary because North Carolina no longer has a claim for "fraudulent conveyances," having replaced the fraudulent conveyance statutes in North Carolina General Statutes Section 39-23.1 *et seq.* with the Uniform Voidable Transactions Act. The defendants argue that Ace's use of language from the old statute makes it impossible to tell if Ace is seeking enforcement under the new Uniform Voidable Transactions Act or the old statutes.

The Court finds that Ace has alleged sufficient facts for McCoy III and Flash Autos to adequately respond to Ace's claim for fraudulent conveyance. Although certain words in the statute have changed, the purpose of the statute and the basic elements remain the same. The Uniform Voidable Transactions Act provides that:

---

[4] The defendants point out that it is not clear whether North Carolina law or South Carolina law applies to Ace's piercing the corporate veil claim. Generally, the law of the state of incorporation governs a claim for piercing the corporate veil. *See, e.g.*, *USA Trouser v. Int'l Legwear Group, Inc.*, No. 1:11-cv-00244-MR-DLH, 2012 WL 6553108 n.3 (W.D.N.C. Dec. 14, 2012). The TAC alleges that Flash Autos is a South Carolina corporation (TAC, ¶ 5). The elements for piercing the corporate veil in North Carolina and South Carolina overlap significantly and the Court finds that, even if North Carolina law does apply, Ace has still sufficiently stated a claim. *See, e.g.*, *Glenn v. Wagner*, 329 S.E.2d 326, 330 (N.C. 1985) (outlining the purposes and law concerning North Carolina's piercing the corporate veil claim); *Al Hamra Trading Est. v. Diamondback Tactical, LLLP*, No. 1:12cv373, 2012 WL 12239095, at *4 (W.D.N.C. July 9, 2013) (discussing the requirements under North Carolina law for piercing the corporate veil).

> A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (1) With intent to hinder, delay, or defraud any creditor of the debtor; or
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> a. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> b. Intended to incur, or believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

N.C. Gen. Stat. § 39-23.4(1)-(2); *see also Haworth, Inc. v. Janumpally*, No. 5:17-cv-423, 2018 WL 3978173 (E.D.N.C. Aug. 20, 2018). The statute further states:

> (a) A transfer made or obligation incurred by a debtor is voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
> (b) A transfer made by a debtor is voidable as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

N.C. Gen. Stat. § 39-23.5(a)-(b).

Ace has stated that it was a creditor, that there was a transfer of property to Flash Autos after its claim was made, that those transfers were made by all the defendants with the purpose of defrauding Ace, and without receiving a reasonably equivalent value in exchange for the transfer. (TAC, ¶¶ 423-32). Ace's citations in its TAC are to the correct statutory sections. Despite Ace's use of some old statutory language, McCoy III and Flash Autos have sufficient information to answer the complaint. Therefore, their motion for a more definite statement on Ace's eighteenth claim is denied.

### 3. Successor Liability as to Flash Autos

Flash Autos asserts that a more definite statement is needed because Ace does not allege that "McCoy Motors and Flash Autos have the same shareholders, directors, or officers" or "any transfer of assets other than office furniture and some car parts" occurred. (Doc. No. 53, at 9). To the contrary, Ace alleges that McCoy Motors and Flash Autos are one in the same, that McCoy Jr. controls Flash Autos through his son, McCoy III, and that Flash Autos now possesses funds, vehicles, car parts, office space, furniture, equipment, and other assets previously possessed by McCoy Motors. (TAC, ¶¶ 268-308). Further, Ace notes that McCoy III and Flash Autos have refused to turn over documents that may show the extent of the asset transfers between McCoy III and Flash Autos and McCoy Jr. and McCoy Motors. The Bankruptcy Court previously found that Flash Autos and McCoy Motors are one in the same. The Court also notes that Flash Autos is requesting that Ace allege more specific facts, yet ignores that it failed to respond to subpoenas that would have turned over such information. The Court finds there is sufficient information for Flash Autos to have notice of the allegations against it and respond accordingly.

Ace's complaint sets forth significant details concerning the factual underpinnings of its claims, including incorporating by reference many of the Bankruptcy Court's previous orders. Given the extensive prior proceedings conducted by the Bankruptcy Court and this Court, the Court finds that McCoy III and Flash Autos have sufficient information to frame an adequate answer to these three claims. Accordingly, their motion for more definite statements is denied.

### C. McCoy Joint Revocable Trust's Motion to Dismiss

Ace's sole cause of action against the Trust is the Twenty-First Claim for Relief—"Reversal of Conveyance to McCoy Trust." (TAC, Count 21, ¶¶ 438-46). Ace alleges that McCoy Jr. and Misty McCoy transferred their interests in their marital residence with the intent to hinder, delay,

or defraud creditors of McCoy Motors. These transfers, Ace asserts, are voidable under North Carolina General Statute Section 39-23.5 and violate the Bankruptcy Court's Preliminary Injunction. *Id.* at ¶¶ 438-446.

The Trust argues that this claim should be dismissed because the TAC only conclusively states that the McCoys received no reasonably equivalent value for the house, "but offers no particularities that support such bald assertions." (Doc. No. 56, at 1). It further argues that "conclusory statements do not state a claim or satisfy the provisions of N.C.G.S. Section 39-23.8 good faith transferee provisions." (Doc. No. 56, at 2).

As required by North Carolina General Statute Section 39-23.5, Ace's complaint alleges that its claims "arose before the transfer." (TAC, ¶ 442). Additionally, as is also required under the statute, Ace's complaint alleges that McCoy Jr. and Misty McCoy "made such transfer without receiving reasonably equivalent value in exchange for such a transfer" (TAC, ¶¶ 441, 438, 440, 443) and that the McCoys "were insolvent at the time" (TAC, ¶ 441). The Court finds this sufficient to state a claim for relief under the statute. Additionally, the Trust did not contest the claim as it arises under the Bankruptcy Court's Preliminary Injunction. Accordingly, the Trust's motion to dismiss is denied.

## IV.  CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. McCoy III's and Flash Autos' Motion to Dismiss, (Doc. No. 50), is **GRANTED IN PART** and **DENIED IN PART;**

2. McCoy III's and Flash Autos' Motion for More Definite Statements, (Doc. No. 52), is **DENIED;** and

3. The McCoy Joint Revocable Trust's Motion to Dismiss, (Doc. No. 56), is **DENIED**.

**SO ORDERED.**

Signed: January 13, 2020

Kenneth D. Bell
United States District Judge